Please support, counsel. My name is Don Wilson. I'm from Phoenix, and I represent the appellant, Rogers. Rogers, in 1999, was a plumbing contractor. They've been described, and I think it's agreed by the parties, that they were what's called a resident plumbing contractor. Namely, they had an office on the Motorola premises. They worked for Motorola, sometimes by contract, sometimes by invoice, but essentially they were at will. They did what Motorola wanted them to do. On November 1, 1999, they were working in an area of one of the Motorola plants. This particular plant is a plant that Motorola redesigned and put very expensive equipment down below and then literally miles of plumbing equipment or pipes up above. So the water runs above the expensive equipment. We had two people up there. They were working. They had been told two months earlier, because of a September 1999 incident, don't touch the valves. All of a sudden, as they're working, a valve pops, breaks loose, floods, and there's damage. I'm not going to get into great detail on the facts. Hopefully you've read the briefs, and the end result was a lawsuit by Motorola, alleging breach of contract and negligence. We responded, denying breach of contract, denying negligence. Also alleged comparative fault because, hey, you shouldn't have put all the expensive equipment down below and then all your water lines up above, you're asking for trouble. Second, as discovery was going along, we found out that there were valves that were bad, old, and were being replaced periodically instead of just all at one time. And as time went on, we found that there had been some similar incidents. We found out there was one on April 9th, about six months before this incident. So what's your theory, that one of these valves just worked its way loose while your guys were up there, and it was a pipe they didn't touch? Right. That's what they testified to. That's what they testified to. Now, with regard to, before I get to the main issue, and what I see as the main issue anyway, during the pretrial, I think it's important to note that we had a really hard time getting material. And to this day, we've had to file a motion after motion. We've cited in our brief, and less than a week before trial, the district court issued an order on March 11, 2004, that says, Rogers have made a compelling showing that plaintiffs, that's Motorola, have engaged in willful obfuscation, misleading disclosure, and a pattern of bad faith discovery behavior that began with plaintiffs' failure to respond accurately to interrogatories and that appears to have continued throughout discovery. They were sanctioned for that, right? Beg your pardon? They were sanctioned. I submit that the sanction didn't give us a fair trial. We proceeded to trial, and we get to the end of the case, and we're deciding on instructions and verdict form. The verdict form, I've got them here. I'm sure you've seen them. If you haven't, I've got, I think, a couple copies. The judge goes home, and he works on a jury verdict form. It has breach of contract and negligence. The parties agree the next day, and it's submitted to the jury. The jury comes back the following day, after being discharged the first day, and they have a question, one question. And the question is cited on page 27 of the brief. And the jury asks the judge, should award dollar amount entered on verdict form be reflected before or after percentage of negligence is applied? That's the question they ask. You can tell from that question what's on their mind, negligence and comparative fault. The judge properly consults with counsel and says, you enter the amount of money, and then you put down the percentages of fault. And that's what they did, and then handed in the verdict. We then, the judge let them go, let the jury go. Had you seen the form by the time the jury was let go? Yes. I mean, you had seen the form as it was filled out by the jury? I don't remember that, but I assume. Did you have any objections to the judge letting the jury go? Did you ask the judge to question the jury? No, there was no discussion about it at all, by no means. You participated in drafting that form, didn't you? I didn't participate. I agreed to it, and I don't deny I agreed to it. But I want to emphasize, this appeal is not about the verdict form. We are not appealing from the verdict form. We are appealing from the judgment. The situation here is, let's hypothetically assume that an attorney waives by just saying, okay, that's fine, as to a form of verdict. Does that waiver as to the form of verdict, if it ends up in an inconsistent verdict, does that mean that the judge can then decide you don't get a jury trial? He can try the case? You want to explain what's the problem? Well, the problem is, is I have a jury verdict form signed by the jury that says it's breach of contract, and it's negligence, and I've allocated fault. Right. But under breach of contract theory, the damages could have reached $2 million, couldn't they? Well, we dispute that. Of course. But if we wouldn't be here at all if the jury had stopped after the line that says discussing express warranty and implied warranty, if they had said yes and filled in that number, you would have had a much, much tougher time here getting here today. Right. It's only because they filled in the bottom half. But if they found a contract violation in the first place, that number matches up with a contract violation, doesn't it? No. There's a contract violation and there's a loss of profit, which I want to discuss. But what they said was they awarded $2,071,658 and then put yes on a contract and then yes on negligence and then on comparative. But in answer to your question, no, it wouldn't have been inconsistent and I wouldn't have been here. Likewise, if they had just done negligence, I wouldn't have been here either. Well, what's the problem? They have one verdict in negligence, one on contract. It's pretty clear. Well, but what happened was the judge took this verdict that says negligence and allocates comparative fault, cut it out, took it away and threw it away, and says I'm not going to use it. I'm going to put it in the judgment. I'm only going to make this a case on contract in the judgment. But that would be valid if you had asked the jury to allocate the $2 million judgment between the contract clause, between the contract claim and the negligence claim. But because those appear to be alternative theories and you just told us now that if it was a pure contract verdict that you wouldn't even be here. This verdict is consistent with the award. No, the judgment isn't consistent with the award. The award finds that there's negligence and comparative and it finds there's contract. So it's inconsistent within itself. Not if they're alternative theories. Not if they're alternative theories on which $2 million could be awarded under either theory. The fact that they found that you had violated both of those. Then I guess the argument is that all of a sudden if a jury signs this verdict, then the judge has an option to pick and choose either one he wants. Well, what might have happened here is that, and that's why I asked you about whether you questioned, whether you asked the judge to question it, the judge might have said to the jury, gee, I've got a question in my mind, and especially since you sent me this question, did you mean for all $2 million of this to be awarded on the basis of the contract theory alone? And if the jury came back and said, no, what we really had in mind was $100,000 on the contract theory and $1.9 million on the negligence theory. Well, that would have given you a different judgment. But when you didn't object and the district court dismissed the jury without objection. But there's no case Rule 49B states very clearly that if the jury is discharged, if they're discharged, it's mandatory that a new trial be granted, Rule 49B. If they're discharged in what? If they're gone. There is one case. I'm sorry, but there's got to be a predicate there. We dismiss juries all the time.  There's a problem with the verdict? I'm still trying to figure out. Nobody discussed any problem with the verdict. The verdict was signed after the jury asked the question. They handed it to the judge. The judge filed it and left, and we filed a motion for new trial, alleging the judge should not have substituted his judgment for the jury. That's what we did. I know you seem to see a problem, but at least there's someone coming into this, reading this for the first time on your briefs. It seems to me so clear. They awarded $2 million on the contract. The judge obviously thought the plaintiff would like the higher verdict, so he gave it to them. The negligence thing meant nothing, so it was discarded. No problem at all. Well, there's no case cited. There's not a case. If you notice the briefs we filed, our motion for new trial, the brief they filed, there is no case where any district court judge or any state court judge did anything like this in any case in the United States. It's not cited. The jury returns a verdict of $2 million on contract. And on negligence, right. And a different verdict on the negligence theory. It's the same amount of money. No, it's reduced by 30%. Well, it would be reduced had he not discarded it. It's reduced. And it's obvious that he has to reconcile. I don't think they're inconsistent, but they're certainly different. It's very different. In the only case we could find, I don't have the name, but it was a case where there was an inconsistent verdict, a federal court case, and the judge said, ladies and gentlemen, this is inconsistent. He explained it. They explained it, and everything was fine. It went up on appeal and was held. The judge did the right thing. He asked them to explain it. Well, here, I don't think there's an argument that I waived by not asking for an explanation by the jury. I don't think they even argue that. I don't think that's asserted. Well, I think that there is a scenario under which the $2 million does not represent the amount that the jury intended to award to Motorola. But there's also a scenario in which $2 million is exactly what the jury intended to do. Now, the question is, is on appeal. When the verdict has been submitted, the jury's been dismissed, the amount's been awarded, what way do our presumptions run? If we're left with two choices, one of which says, yeah, a mistake has been made, and another one says there's no mistake has been made, what are we supposed to do? I think under Rule 49B, the jury can't explain it anymore. There is a Supreme Court case that says the judge has an opportunity to harmonize the verdict. It's cited. I don't have time now. There's six minutes and 50 seconds left. But there is a case. It is cited. I cited it. And if the court had harmonized the verdict, he would have read that question that was asked seconds before the verdict was signed, and he would have gone to the negligence because we know that's what the jury intended. They wanted a reduced verdict by 30 percent. So he not only selected what he wanted, but he selected what the jury didn't want. Well, that's one possible theory. And it's a perfectly good theory. It's just not the only theory. The other theory is the jury wasn't exactly sure what they were supposed to do with this form, and they haven't realized that these are alternate avenues for recovery. The amount could stand or fall independently on these theories. And if that's the case, Mr. Wilson, as you just told me just a minute ago, that there would be no problem. If the verdict was in contract only on the $2 million, then the judge can harmonize the verdict here. Nothing to harmonize. But if you've got a verdict like this that conflicts within itself, it's a special verdict, obviously, then you can go harmonize if you can. And he could have harmonized because he knew what was on that jury's mind right there at the last second. He knew. And so all I'm saying is he substituted his judgment for the jury, and under the Supreme Court case, the Guzik case, he didn't harmonize the last thing he heard, so he committed error and were entitled to a trial de novo, a complete trial de novo. It all comes to the fact that I believe we're deprived of a right, our Seventh Amendment right to a trial by a jury under the Constitution because we have in this judgment the judge's conclusions, not the jury's. The jury may have written one down that was hard to read. Maybe it's inconsistent. Maybe it could never be enforced. Maybe it should have been handled with a question. Maybe a lot of things should have been done, but 49B covers that. 49B says if you discharge that jury and you have an inconsistent verdict, then you have no choice but to grant the new trial. Okay. Let me talk on some other matters, obviously. On the question of concealment of evidence, for instance, and I would ask you to look at these issues because I'm sure you hear a lot of these on the field, but a week before this order I just read to you was a week before the trial, a month before the trial, a little over a month before the trial, we finally got records on the April 9th flood, which was a massive flood that closed down the plant and was very similar to ours and was right near ours. Things were being hidden. During testimony, Mr. McCusker, an employee of Motorola, pops out with, oh, I've been keeping a record of leaks for five years. We have absolutely no information about that. We are entitled to that. We should have had that. We didn't have that. And all of this will be reviewed for abuse of discretion? Yes, and that's what we decided. Mr. McCusker also gets on the stand, and he is not listed under Rule 26. No CV is given, no report is written, and pow. They say in near 30 years, experiences a plumber objection, and opinion after opinion on page 16, 17, and 18 of our brief, he rattles off opinion after opinion after opinion. It's error. There was a motion in Lemony in this case, do not bring in insurance. They decide to read our expert's deposition, and one of the first questions is a question that has the word insurance in it, and the whole thing that's discussed is insurance, and it has nothing to do with the man's opinion. So throughout the course of this trial, we have today, as I sit here today, I do not know what happened in those five years that McCusker was talking about. As I sit here today, I do not know what happened on April 9th, six months before this incident here, because we only found out about it a little over a month before trial started and didn't have an opportunity to do any discovery because discovery was cut off. I'll say the remainder of the time. Okay. Thank you, Mr. Wilson. Mr. Murray? Thank you. May it please the Court. This case comes to this Court following a six-day jury trial on which the judge and the jury heard an awful lot of evidence, the jury rendered a verdict, the judge turned aside post-judgment motions, and the judgment finally was entered. Appellants have raised seven different issues, six of which were reviewed for abuse of discretion and one of which, if not waived, is just wrong. Let me start there, which is the verdict. As Judge Bybee just pointed out, under this Court's precedent, Magnuson v. Yak, if there are allegedly inconsistent verdicts, unless it is impossible under a fair reading to harmonize the answers, the verdicts must stand. Here, we would submit that not only is it not impossible for these verdicts to be read consistently, in fact, it makes complete sense. During some jury instruction discussions, which you'll find on S.E.R. 204, counsel for defendants was very clear, there's only going to be one award of damages, period. And, in fact, we just heard him say here, there is no difference between the damages for contract and the damages for negligence. It was one flood. When the jury filled out the form, they asked the judge, let's be clear on this first line up top here, what is the total damages and is that what we're supposed to fill in? And the judge said, yes, fill in the full damages. After that, they went through and found that the damages were awardable based both on contract and on negligence. There's just no ambiguity here. Well, counsel, there is ambiguity here. It may be that the ball balancing on the knife edge falls in your favor, but there clearly is ambiguity here. This form could have been drafted very differently. It could have said, how much do you wish to award in contract? How much do you wish to award in tort? If you're going to award the following in tort, please multiply it by the following percentage as you determine. Now, at least it would be just like a tax form. You know, if line 38 is bigger than line 41, then multiply it by your hat size and put it on line 52. We could have done that here, and it might have eliminated a question from the jury. It might have made it clearer what they were supposed to do. Now, it's quite possible that the jury said, well, we think that Motorola only lost $100,000 in contract, but in tort they're going to lose 1.9. They've lost 1.9 million. We've added those up, in which case your client is going to collect more money than the jury intended them to get. I mean, that's offered as a theoretical possibility. It's just not the way the evidence went in. There was never any – if you read the jury instructions, the instructions on negligence damages and the instructions on contract damages, which are instructions 20 and 24 respectively, list out the same elements. And there was no idea that the contract damages could be somehow separate from the negligence damages. But I think Your Honor had the point directly on, which is even if there is ambiguity, if the jury verdicts can be reconciled, they should be here. There's no question that they can be. At most, there's a contention that, and as I thought I heard counsel just say, the jury should have just stopped when it got done with contract, and then there would be no problem here. Of course, the problem with that is, had the jury just stopped, and had anything happened to the contract count on appeal for one reason or another, then we'd have to go back and have a new trial. I mean, clearly now that the whole thing is out in front of the jury, they should just decide the case once and for all and be done with it. That's what they did here on a verdict form that was never objected to by opposing counsel. The verdicts can be squared, and thus they should be. Moving on to Jerry McCusker and his alleged expert testimony, the problem here is waiver. The objection of being an undisclosed 26B2 expert was simply never made. There was one expert made with respect to McCusker. It was a 26A1 outside the scope of the disclosure. It was handled at a sidebar about between 15 and 44 pages in the record before where this alleged expert testimony came up. No one ever said a word about an improper expert. The objection was not made. It is waived. Moving on to the alleged discovery misconduct and the alleged newly discovered evidence, the problem is not only is it reviewed for abusive discretion, it also just isn't what happened here. The district judge on the eve of trial, faced with a motion detailing a series of really outlandish allegations of discovery misconduct that this April 99 flood was never disclosed, entered an order saying this is a fairly compelling showing. I'm not going to rule on this now. I will allow this discovery to be had. I'll allow another deposition, and I'll deal with it later. And that's exactly what he did. And following trial, in the cold light of day, he looked at the record and unambiguously said two things. First, there was no willful concealment of evidence here. In fact, this stuff had been disclosed long prior many times. And if there's any question on that, you'll find it on page 57 of the opening brief where counsel admits Motorola suffered an April 1999 flood as testified to at trial by at least three different witnesses. You did get hit with sanctions, though, for your conduct. We did get hit with a $20,000 sanction for the conduct. As I stand here before you, I can't explain why. But the point of the matter is the district judge knew what he was doing. He took the matter in hand. There was no abusive discretion here. Moving on to the mention of insurance, again, this came up as an inadvertent mention of insurance. It was a reading of some deposition testimony. The other side decided not to call the witness the night before. The testimony was hurriedly put together. It was the designations that had been made a month before and read into the record while everyone was sort of reading along. The objection came up at the end, and to be clear, what the testimony was was that he had done all of his prior work for insurance companies. This is not something where we do extensive testimony on everyone here is insured. Please go ahead and award whatever damages you want. It was never argued to the jury. And here the jury would have had to have made two jumps for this to be in any way presidential. The fact that he worked for insurance companies in the past means he's doing it now, and the fact that he's doing it now means they should award damages because insurance is going to pick up the tab. Again, there was no abusive discretion here. Which moves us to the profit loss. Again, this is not against the weight of the evidence. The standard is, of course, if the record contains no evidence in support of the verdict. Again, that's just not met here. There was extensive testimony put in by both an industry expert, a guy named Schweckenrath, and a Motorola employee named Paul Bull, where they talked extensively about contribution margin as being the correct way to measure damages here. The problem is that MOSFIX being the facility within this manufacturing plant where they were making these fabs, where they were making semiconductors where the flood occurred, it didn't keep its own books. It wasn't a standalone entity. These people testified that in the face of that, if you know that the plant as a whole is operating at full capacity 364.5 days a year, and you know what the bottleneck was that was caused at this machine, how many turns, as they called, were lost, then you can calculate from that what the damages were by this being down for three days, going from an average of 40,000 turns a day down to something like 15, 20, and 25 in the three days following the flood. There was extensive testimony on this. It can't reasonably be said that there was no evidence to support the damages award. Again, there was no abuse of discretion here. Second to lastly, the assumption of the risk instruction question. We heard counsel talk about how there were pipes over the top of the semiconductors making equipment. Yes, that's true. That's not how assumption of the risk works in Arizona. As the trial judge was just absolutely right on top of, the law in Arizona is that the risk is not assumed unless the person, the plaintiff, is aware of the specific negligence to be visited upon him. It's not enough to know that water might go on your semiconductor maker. You must know that the plumbers are going to come in and monkey around with the collar valve in a way that they were explicitly told not to. That's when you assume the risk. In fact, the only testimony in the record on this point came out of the mouth of JBR's own expert. There was a meeting after a prior incident with a ball valve and some JBR employees where Motorola had a series of meetings with the JBR folk and said, seriously, don't touch the ball valves. JBR's own expert, Creighton Berg, admitted, if you tell the plumbers not to touch the ball valves, it's not foreseeable that they're going to come in and touch the ball valves and a flood will occur. There was no assumption of the risk here. Finally, as to the award of attorney's fees, Arizona law permits the awarding of attorney's fees in contract actions. There's a six-factor test that we go through in our briefs. I won't bore the Court with rehashing it here, only to say, again, there was no abuse of discretion in the award of attorney's fees here, unless the Court has any questions. Okay. Thank you, Your Honor. Thank you, Mr. Murray. Mr. Wilson, you have some time remaining. Your Honor, let me point out. I was just – he just stated I didn't object to Mr. McCusker testifying as an expert. I have before me excerpt of record, and I'm referring to page 249. We are discussing Mr. McCusker, and the Court says on line 24, the objection will be overruled. We discussed it at length. That's the kind of information that you're hearing. Now, here is his disclosure. Jerry McCusker was the facilities maintenance and operations manager at Motorola's Mesa plant. Mr. McCusker assisted with cleanup and may have information relevant to the plaintiff's damages and claims. Now, that has nothing to do with an expert. I mean, I need a CV. I need a report that be written under federal law. I have none of that information. So, what you've just heard, I think, is a little inaccurate. With regard to his record, he didn't have to pick up his deposition and read this. First question, question, can you estimate percentage of cases where you have been retained by an insurance company? That's the question. And there's a motion in limine to preclude insurance. And they go on. And he says, I would equate that with defense cases. And they go on, and he ends up saying, all my work is for insurance companies. And that's what they wanted. Now, what does that have to do with a plumbing expert and his testimony? Did you object to that? Yes. And, you know, at great length. And I have a situation with profit and loss. I have three people they brought in who said, I cannot show you one piece of paper or one time where we lost any sale. And then they say, yes, we have to lose a sale to lose profit. I bring in an expert who said there is no paper and no evidence that they lost a sale so they can't lose profit. They bring an expert who says, I read a bunch of documents, and I find a $1.3 million worth of lost profit. And it's interesting because they had six months to fill out a proof of loss. They have $5 million insurance with the other plaintiff. They took six months to fill out proof of loss, and they did not mention profit loss in any way, nothing. And then the lawsuit is filed a year after the incident, and it's created during the lawsuit, profit loss. But I have no documents to support it. In conclusion, you know, I realize that you feel that the court apparently had an option. It couldn't do what the court chose. But I want to emphasize that we are appealing from the judgment. We're appealing from what the judge did. The judge was confronted with an ambiguous verdict. If the judge had tried to harmonize it, all he had to do is take that question he got seconds earlier, just moments earlier, and harmonize it. In that case, he didn't attempt to. I don't know how he got to contract, but it represents the district court's opinion, not the jury's. So I have a case here where I tried a case for six days, and I don't have a jury verdict or anything from the jury verdict except the amount of damages. I have the judge's interpretation after throwing away a part of the verdict. But this case is loaded with error. It has, like I say, right up until the present moment, I've got a situation where I don't know. I think we understand your position. Thank you. Thank you, Mr. Wilson. Okay, we thank counsel for the argument. And Motorola v. J.B. Rogers will be submitted, and the court will stand in recess until tomorrow.
judges: Noonan, Bybee, Schwarzer